## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HUA JIANG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-CV-255-CVE-CDL |
| | ) | |
| CITY OF TULSA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Now before the Court is Defendant City of Tulsa's Motion for Summary Judgment and Brief in Support (Dkt. # 45). The City of Tulsa (the City) seeks summary judgment on plaintiff Hua Jiang's employment discrimination claims under federal and state law. Plaintiff's employment discrimination claims are based on a failure to promote theory, and the City argues that plaintiff has failed to show that he was so substantially more qualified than the other job applicants that it creates an appearance of workplace discrimination. Dkt. # 45. Plaintiff responds that he should have been considered the only qualified applicant for the position, and the City's efforts to minimize the job requirements to allow less qualified younger and white applicants to qualify for the position shows that the City's stated reason for denying him the position was pretextual.

### I.

Jiang has worked for the City since 2010, and he is currently employed as a senior engineer in the water and sewer department of the City. Dkt. # 45-1, at 14-15. Jiang was originally classified as a professional engineer at level EX-40 on the City's pay scale, and he has been a senior engineer at level EX-44 since 2012. Id. at 16. Jiang's duties have remained similar throughout his

employment with the City, and he broadly provides technical support for the operation of water treatment plants.  Id.

The City charter requires that "[a]ll original appointments and promotions to positions in the classified service shall be based upon competitive procedures."  Dkt. # 45-2, at 2.  When a person applies for original appointment or a promotion, the City's personnel director must initially certify that the applicant meets the minimum requirements for the position, which can include education and work experience.  Dkt. # 45-4, at 1.  The City's personnel policies and procedures provide guidance for the consideration of education as a factor for employment or promotion, and the City has the discretion to consider experience in lieu of education in certain circumstances.  Dkt. # 45-3, at 24.  However, experience may not be substituted for education "for positions with specific degree requirements of positions that require specific course work."  Id.  Prior to August 2021, the City allowed applicants to substitute years of experience for years of education at a one to one rate, as long as the applicant had half of the required education required for the position.  Id.  Certification is a preliminary process for the personnel director to make an initial determination as to which applicants meet the qualifications for a position, and certification does not require the appointing authority to hire a particular applicant.  Id. at 10.

In June 2021, Jiang applied for a job opening for the water treatment plant superintendent of the AB Jewell Water Treatment Plant.  Dkt. # 45-1, at 94; Dkt. # 53-4.  The position would not have provided Jiang a pay raise, but he believed the position would have provided him valuable managerial experience that would help open up other career prospects.  Dkt. # 45-1, at 51-52.  The job posting provided the following description of the necessary educational qualifications and jobs skills:

Training and Experience: Graduation from an accredited college or university with a bachelor's degree in engineering technology, environmental/biological sciences, or a related field and five (5) years of progressively responsible experience in the operation of a water treatment plant; or an equivalent combination of training and experience per Personnel Policies and Procedures, Section 128. Certification as an engineering intern can be substituted for one year of experience.

Knowledge, Abilities, and Skills: Considerable knowledge of the principles, practices, and techniques involving water or wastewater treatment; considerable knowledge of technology utilized in treatment plant operations and maintenance; considerable knowledge of engineering design problems and troubleshooting techniques in a treatment plant; and considerable knowledge of local, state and federal requirements governing treatment plant processes and compliance. Ability to effectively supervise and develop the subordinate personnel; ability to maintain records and organize data to report to management and to make recommendations for improved operations; ability to effectively train and provide employees with the necessary tools to successfully perform their job duties; and the ability to utilize the highest level of interpersonal skills to understand, select, develop, and motivate people at any level within or outside the organization.

Dkt. # 45-7, at 2. Jiang, John Curry, and Dylan Hutchcraft were certified by the personnel director as candidates for the water treatment plant superintendent position. Dkt. # 45-6, at 39-40.

Jiang holds a Ph. D in environmental engineering from the University of Missouri-Rolla. Dkt. # 45-10, at 3. Jiang's application listed his employment with the City as a senior engineer, and he also had prior employment as a process engineer and laboratory director prior to beginning his employment with the City. Id. at 6-7. John Curry had been the maintenance supervisor for the AB Jewell Water Treatment Plant since 2014, and he claimed that he managed a ten member team "to maintain rotating machinery, electrical systems, instrumentation, plumbing, HVAC, and SCADA related equipment." Dkt. # 45-8, at 4. However, he did not have a bachelor's degree and had completed 60 credit hours at Tulsa Community College. Id. at 3. Dylan Hutchcraft had been a treatment plant operations supervisor at the Mohawk Water Treatment Plant since May 2020, and he had previously worked as a treatment plant operator. Dkt. # 45-9, at 4. Hutchcraft served in the

3

National Guard, and he had completed 66 credit hours at Southern New Hampshire University.  Id. at 3.  The personnel director certified Jiang, Curry, and Hutchcraft for the water treatment plant superintendent position, even though Curry and Hutchcraft did not satisfy the educational requirement for the position.  Dkt. # 45-4, at 2.  The City claims that it had a policy of substituting one year of experience for one year of education as long as the candidate met half of the educational requirement for a position, and Curry and Hutchcraft were certified under this policy.  Id.

The water supply systems manager, Stefanie Hunter, assembled an interview panel consisting of Eric Lee, Joan Gausvik, and herself, and the interviews took place on June 28, 2021.  Dkt. # 45-6, at 50-51.  Each interviewer provided a score of up to 40 points per candidate, consisting of up to 5 points in eight separate categories.  Dkt. # 45-11, at 2.  Jiang received high scores from each of the interviewers on his educational and technical qualifications for the position, but he received much lower scores in the categories of verbal communication and interpersonal skills.  Hunter noted that Jiang had excellent technical skills, but it seemed he needed better communications skills and additional managerial experience before he would be ready for the position of water treatment plant superintendent.  Id. at 5.  Lee's scores and remarks were consistent with Hunter's opinions, and Gausvik noted that she expected Jiang to have more "concrete recommendations and ideas for improvement."  Id. at 1, 8.  Jiang received a total of 83 points from the interview panel.  Curry received low scores for educational qualifications, but he was generally scored higher for his interpersonal skills and enthusiasm for the position.  Id. at 3, 7, 10.  Curry received a total of 81 points from the interview panel.  Hutchcraft received the highest score from each member of the interview panel.  Hutchcraft's scores were lower for his educational qualifications for the job, but each panel member found that he had significant managerial experience and strong communication

4

and interpersonal skills.  Id. at 2, 6, 9.  Hutchcraft received a total of 88 points from the interview panel.

Hunter was the ultimate decision maker as to the selection of the water treatment plant superintendent, because the position would report to her.  Dkt. # 45-15, at 1.  Hunter selected Hutchcraft for the position and Jiang was notified on June 30, 2021, and thereafter Jiang filed a grievance challenging the decision.  Dkt. # 45-14.  Jiang claimed that he was "more educated, more experienced and more qualified" than Hutchcraft, and Jiang alleged that he had repeatedly been denied promotions due to racial discrimination in the selection process.  Id. at 2.  The City's human resources department rejected Jiang's grievance, and Jiang appealed the decision to the Civil Service Commission (the Commission).  Dkt. # 45-15, at 2.  In August 2021, the Commission investigated Jiang's allegations that the City failed to follow its own written policies on the substitution of experience for education, and the Commission separately considered Jiang's allegations of racial discrimination.  Id.  The Commission concluded that "the City did not follow Section 114.2 of the Personnel Policy and Procedures Manual on Certification; specifically, as to the application of qualification and the current job description as written and the application of Section 128 of the Personnel Policy and Procedures Manual."  Dkt. # 45-16, at 2.

The City's personnel director states that the City thereafter changed its policies on August 26, 2021 to reflect its past practices, and the City also revised the job description for the treatment plant superintendent position.  Dkt. # 45-4; Dkt. # 45-17.  The "knowledge, abilities, and skills" section remained unchanged from the previous job listing, but the training and experience requirements were modified as follows:

Training and Experience: Completion of 120 hours from an accredited college or university and five (5) years of experience in a field relevant to the essential tasks of this job description or completion of 60 hours from an accredited college or university and seven (7) years of experience in a field relevant to the essential tasks of this job description. Certification as an engineering intern can be substituted for one year of experience.

Dkt. # 45-17, at 2. The job description no longer required a degree in the specific fields of engineering technology, environmental biological sciences, or a similar field, and the educational requirements could also be satisfied by 60 hours of general college credits and seven years of relevant experience. Both Hutchcraft and Curry could meet the educational requirements for the revised job description.

In September 2021, the personnel director again certified Jiang, Hutchcraft, and Curry as applicants for the AB Jewell water treatment plant superintendent position. Dkt. # 45-4, at 3. The second interview panel consisted of Hunter, Matt Vaughan, and Jo Brown. Vaughan was the water pollution control manager for the City at the time of the interview, and Brown was the City's water quality assurance manager. Dkt. # 45-18, at 9; Dkt. # 45-21, at 7. The interviews were scored on a scale with a maximum score of 5.0. Vaughan rated Jiang the highest out of the three applicants with a score of 3.87, even though Vaughan was aware of a complaint from a consultant who had a difficult time working with Jiang. Dkt. # 45-20, at 3. Vaughan gave Hutchcraft a score of 3.325, and Curry received a score of 3.0 from Vaughan. Dkt. # 45, at 12; Dkt. # 53, at 15. Hunter rated Hutchcraft the highest with a score of 4.15, and she found that Hutchcraft had a "big advantage" over the other candidates in terms of managerial experience and leadership. Dkt. # 45-20 at 8. Hunter gave Curry a score of 3.725, and she scored Jiang the lowest out of the three candidates at 3.375. Dkt. # 45, at 13; Dkt. # 53, at 17. Brown gave Curry and Hutchcraft very similar scores of 3.375 and

6

3.325 respectively, but Jiang received a much lower score of 1.725 from Brown.  Brown felt that her scores reflected who she thought was the best candidate and, even though she had previously worked with all three candidates, her interview scores solely reflected her evaluation of the candidates' interview responses.  Dkt. # 45-21, at 68-69.  Hunter felt that Brown's scoring of Jiang was too low, but Hunter acknowledged that Jiang often talked in circles and did not provide concrete examples to support his explanations.  Dkt. # 45-6, at 166-67.

Hunter had final decision making authority for the water treatment plant superintendent position, and she selected Hutchcraft as the best all-around candidate.  Id. at 164-65, 233.  She found that Jiang had strong technical abilities and Curry had leadership ability, but Hutchcraft was more even across multiple qualifications for the position.  Id. at 164.  Jiang acknowledges that it is "pretty common" for an operations supervisor to move into the plant superintendent position.  Dkt. # 1, at 55.  Jiang has declined to apply for a position as an operations supervisor to gain additional experience, because he would view that as a demotion and an insult.  Id.  Upon learning of Hutchcraft's selection for the job, Jiang filed a second grievance challenging his non-selection, and the grievance was heard by the Commission on January 13, 2021.  Dkt. # 45-24.  The Commission determined that City followed its personnel policies during the selection process, and Jiang's grievance was denied.  Id.  Jiang filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) that was signed by Jiang on November 17, 2021, but the charge states that it was received by the EEOC Chicago district office on August 5, 2022.[1]  Dkt. 45-5.  The

---

[1]    Plaintiff has provided evidence that he mailed the charge on November 17, 2021 and FedEx delivered the charge to an undisclosed address in Oklahoma City on November 18, 2021.  Dkt. # 53-8, a 2.  Plaintiff contacted the EEOC in May 2022 when he had not received any response from the EEOC about his charge, and there is sufficient evidence to support an inference that plaintiff actively attempted to file a charge well before August 5, 2022.  The

charge alleges that the City discriminated against Jiang based on his race, national origin, and age, and he also claims that the City retaliated against him for engaging in protected activity.  Id.

On June 2, 2023, Jiang filed this case in Tulsa County District Court alleging race discrimination and retaliation claims under Title VII, as well as state law claims under the Oklahoma Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 et seq. (OADA) under the same theories.  Jiang alleges age discrimination and retaliation claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. (ADEA), and he also alleged a claim under the Equal Pay Act, 29 U.S.C. § 206(d) (EPA).  The City removed the case to this Court based on federal question jurisdiction.  The City filed a motion to dismiss plaintiff's EPA claim, and the motion was granted without opposition from plaintiff.  Dkt. ## 8, 12, 13.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored

---

City argues that plaintiff lacks standing to bring many of his claims based on a filing date of August 5, 2022 but, viewing the evidence in a light most favorable to plaintiff, it appears he actually filed or attempted to file his charge in November 2021.  Therefore, the Court does not find that plaintiff's employment discrimination claims are time-barred to the extent that his claims were included in his November 2021 charge.

procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

The City argues that it has provided a legitimate, non-discriminatory explanation for its selection of another candidate for the water treatment plant superintendent position, and plaintiff has no evidence suggesting that the City's explanation was pretextual for race or age discrimination. Dkt. # 45, at 21-24. As to plaintiff's retaliation claims, the City contends that plaintiff has not suffered an adverse employment action in retaliation for engaging in protected activity, and he cannot show that the City engaged in any action with the intent to retaliate against plaintiff for engaging in protected activity. Id. at 26. Plaintiff responds that City changed the job requirements for the water treatment plant superintendent position to allow less qualified white applicants to meet the

requirements for the position, and this supports an inference that the City intended to discriminate against plaintiff because of his race or age.  Dkt. # 53, at 27-28.  Plaintiff also claims that changing the job description was itself a retaliatory act for plaintiff's filing of a successful grievance challenging the first hiring process for the water treatment plant superintendent position.  Id. at 30.

**Race and Age Discrimination**

The City asserts that it had a legitimate, non-discriminatory reason for awarding the water treatment plant superintendent position to another candidate, and plaintiff cannot establish that this decision was pretextual based only on his allegedly superior qualifications for the position.  Dkt. # 45, at 23-24.  Plaintiff contends that the City lowered the educational requirements for the water treatment plant superintendent position to allow less qualified white applicants to qualify for certification and the City relied solely on subjective hiring criteria, and these factors support an inference that the City's explanation for awarding the position to Hutchcraft was pretext for race or age discrimination.[2]  Dkt. # 53, at 27-28.

Plaintiff has no direct evidence of race or age discrimination and, in reviewing a discrimination claim based on circumstantial evidence, the Court must apply the burden-shifting

---

[2]    The Court has reviewed plaintiff's response and the evidence city by plaintiff and can find no evidence actually providing the age of Hutchcraft or Curry.  Plaintiff repeatedly refers to Hutchcraft and Curry as "younger" workers, but he fails to provide evidence to support this assertion.  This is a sufficient reason to grant summary judgment to the City on plaintiff's age discrimination claims.  In any event, plaintiff also makes no attempt to separately analyze the City's actions in terms of alleged racial or age discrimination, and the Court's pretext analysis will be the same for plaintiff's race and age discrimination claims.  For the purpose of this Opinion and Order, the Court will assume that Hutchcraft and Curry would be considered younger workers for the purpose of an ADEA claim and will follow the burden-shifting analysis for race and age discrimination claims.

framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[3]  <u>Frappied v. Affinity Gaming Black Hawk, LLC</u>, 966 F.3d 1038, 1056 (10th Cir. 2020) (burden shifting analysis applies to ADEA as well as Title VII claims).  Under this framework, the plaintiff bears the initial burden to establish a <u>prima facie</u> case of discrimination.  <u>Sanders v. Southwestern Bell Telephone, L.P.</u>, 544 F.3d 1101, 1105 (10th Cir. 2008).  To establish a <u>prima facie</u> case of race or age discrimination, a plaintiff must show: (1) he is within the protected group; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination.  <u>Ford v. Jackson Nat'l Life Ins. Co.</u>, 45 F.4th 1202, 1215 (10th Cir. 2022).  If the plaintiff meets his burden, the employer must "come forward with some legitimate, non-discriminatory reason for the adverse employment action."  <u>Hinds v. Sprint/United Management Co.</u>, 523 F.3d 1187, 1195 (10th Cir. 2008).  If the employer produces a legitimate, non-discriminatory reason for its decision, the burden shifts to the plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true reasons, but were a pretext for discrimination."  <u>Rivera v. City & County of Denver</u>, 365 F.3d 912, 920 (10th Cir. 2004).  The mixed-motive analysis established in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989), does not apply to claims under the ADEA, and a plaintiff asserting an age discrimination claim under the ADEA retains the "burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."  <u>Gross v. FBL Financial Servs., Inc.</u>, 557 U.S. 167, 177 (2009).

At the second stage of the <u>McDonnell Douglas</u> analysis, the burden shifts to defendant to come forward with a legitimate, non-discriminatory reason for its actions.  "The defendant's burden

---

[3]     Plaintiff has also alleged race and age discrimination claims under the OADA, and these claims are subject to the same burden-shifting analysis as plaintiff's Title VII claim.  <u>Jones v. Needham</u>, 856 F.3d 1284, 1292 (10th Cir. 2017).

is merely to articulate through some proof a facially nondiscriminatory reason for the [action]; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion." EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1316 (10th Cir. 1992). The Tenth Circuit has described the defendant's burden at this stage of the proceedings as "exceedingly light." Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1165 (10th Cir. 2007). Even if the plaintiff disputes that the defendant's stated reason was not the true reason for the adverse employment action, the burden shifts to plaintiff to show that the stated reason is pretextual as long as the defendant meets its burden to state a legitimate, nondiscriminatory reason for its actions. Plotke v. White, 405 F.3d 1092,1099 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004).

"A plaintiff demonstrates pretext by showing . . . that the employer's proffered explanation is unworthy of credence." Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)). A plaintiff typically attempts to satisfy his burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)). A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment. Branson v. Price River Coal Co., 853 F.2d 786, 772 (10th Cir. 1988). In the context of an age discrimination claim, the burden of

persuasion remains with plaintiff at all times to show that age was the but-for cause of plaintiff's termination.  Smith v. City of Allentown, 589 F.3d 684, 691 (10th Cir. 2009).

The City does not contest that plaintiff can establish a prima facie case of race or age discrimination, and the Court will proceed directly to the City's legitimate, non-discriminatory explanation for failing to promote plaintiff.  Dkt. # 45, at 21.  The City acknowledges that plaintiff was qualified for the position of water treatment plant superintendent, but Hunter preferred to select a candidate with a range of technical skills and leadership abilities.  Id. at 22.  The selected candidate, Hutchcraft, did not have as much technical knowledge as plaintiff and was not as strong in management skills as Curry, but Hunter believed that Hutchcraft was strong in both areas and was a better all-around candidate.  Id.  This explanation satisfies the City's requirement to provide a legitimate, non-discriminatory reason for the decision to offer the water treatment plant superintendent position to Hutchcraft, and the burden shifts to plaintiff to come forward with evidence showing that the City's explanation is pretextual.

Plaintiff argues that the City violated its own policies to consider Hutchcraft and Curry for the position of water treatment plant superintendent during the initial hiring process, and plaintiff contends that he should been considered the only qualified applicant for the position.  Dkt. # 53, at 27.  Plaintiff relies on the City's decision to change the requirements for the job after he successfully challenged the first hiring decision, and he claims the City lowered the job requirement to favor white and younger applicants.  Id.  Plaintiff complains that the certification and hiring decisions were wholly subjective, and the lack of objective criteria for certifying and hiring allowed the City to favor white applicants.  Id. at 28.  Finally, plaintiff argues that he was vastly more qualified that Hutchcraft

or Curry, and the decision to select a candidate other than plaintiff is sufficient on its own to establish pretext.  Id. at 28-29.

Plaintiff's assertion that the hiring criteria for the water treatment plant superintendent position was "wholly subjective" is not supported by any credible evidence.  During the second hiring process, each interviewer completed a form with 14 questions concerning various qualifications for the position, goals if the candidate were selected, and past experience that would be relevant to the job.  Dkt. # 45-20.  The interviewers were provided a scoring matrix that gave varying weight to each of the 14 questions.  Dkt. # 45-19.  This method is not certainly not wholly objective, but plaintiff's description of the process as "wholly subjective" in not supported by the evidence.  It is unlikely that any hiring process is ever entirely objective, and there will always be factors outside of purely objective qualifications  that affect the ultimate hiring decision.  Evidence of subjective criteria will typically not be considered sufficient to establish pretext unless "the criteria on which the employers ultimately rely are entirely subjective in nature," and courts have "long respected employers' wide latitude 'in setting job standards and requirements and in deciding whether applicants meet those standards.'"  Ford, 45 F.4th at 1218-19 (quoting Conroy v. Vilsack, 707 F.3d 1163, 1177 (10th Cir. 2013); see also Turner v. Public Service Co. of Colorado, 563 F.3d 1136, 1145 (10th Cir. 2009) (noting that there is "certainly a level of subjectivity in any interview-based selection process" and the use of subjective criteria is not inherently discriminatory).  The subjective components of the interview process in this case were balanced with an effort to rank the applicants based on a set of objective criteria, and plaintiff has not shown that the hiring process was so subjective that it gives rise to the appearance that the City's stated reason for selecting another candidate for the water treatment plant superintendent position was pretextual.

Plaintiff argues that the City's decision to change the job description after his successful grievance was a "backdoor to favor the two unqualified white and younger applicants." Dkt. # 53, at 27. Even if the Court assumed that the City changed the job description to widen the pool of applicants, this by itself does not tend to show that City acted with the intention of discriminating against plaintiff because of his race or age. The mere fact that the City changed the job description and expanded the potential pool of applicants does not inherently suggest that the City took this action to discriminate against plaintiff because of his race or age. See Conroy, 707 F.3d at 1179 (readvertising a position and lowering the qualifications to attract more applicants was not evidence that the employer sought to discriminate against the plaintiff). Even if the Court were to assume Hunter had some personal animus against plaintiff, he still has the burden to come forward with some evidence suggesting that Hunter selected another candidate for a prohibited reason. Plaintiff has not identified any comments by co-workers or other incidents suggesting that he was subjected to mistreatment because of his race or age. Instead, plaintiff argues that he was obviously more qualified for the position of water treatment plant superintendent, and he claims that the hiring process and the decision to select another candidate are sufficient evidence of pretext. Id. at 28-29.

In some cases, a court may be willing to infer pretext "when the facts assure us that the plaintiff is better qualified than the other candidates for the position . . . ." Jones v. Barnhart, 349 F.3d 1260, 1266-67 (10th Cir. 2003). The Tenth Circuit has cautioned that "'pretext cannot be shown simply by identifying minor differences between plaintiff's qualifications and those of successful applicants,' but only by demonstrating an 'overwhelming' merit disparity." Santana v. City and County of Denver, 488 F.3d 860, 865 (10th Cir. 2007) (quoting Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1319 (10th Cir. 1999)). An employee's own belief that he is better

qualified for a position than other candidates is not sufficient to establish pretext, and a plaintiff must do more than offer "self-serving appraisals." Ford, 45 F.4th at 1219. The Court must ultimately assess whether an employer could have believed in good faith that the selected candidate was more qualified than the plaintiff. See Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303, 1308 (10th Cir. 2005).

Applying this standard, the Court finds that the City had a good faith belief that Hutchcraft was better qualified for the position of water treatment plant superintendent than plaintiff. Plaintiff is correct that Hunter has not disputed that plaintiff was qualified for the position, and Hunter acknowledges that plaintiff's educational and technical qualifications were strong. Dkt. # 45-6, at 164. However, this was not the only consideration when selecting a candidate for the position, and leadership and managerial skills were equally important to Hunter. Id. at 164-65. Hunter found that Hutchcraft "was fairly high across all of the categories," even if he was not the strongest candidate in any particular category. Id. The overall scores from both rounds of interviews support Hunter's opinion that Hutchcraft was generally viewed as the best all-around candidate, even though every interviewer noted plaintiff's outstanding educational qualifications. Conroy, 707 F.3d at 1175 (the plaintiff's strong technical skills alone did not make her the best candidate when leadership and managerial skills were considered more important by the employer).

Plaintiff has not met his burden to show that the City's stated reason for selecting Hutchcraft for the position of water treatment plant superintendent was pretextual. It is clear that plaintiff believes he was the strongest candidate for the position, but this by itself is not enough to support a workplace discrimination claim. Plaintiff was very strong in the areas of education and technical skills, but interviewers consistently found that plaintiff was lacking in other areas. The City

16

incorporated objective criteria into the hiring decision, and the City was not required to wholly remove subjective considerations from the hiring process. Plaintiff has not shown that the City's decision to select Hutchcraft for the position of water treatment plant superintendent was pretextual for race or age discrimination, and summary judgment should be granted to the City on plaintiff's disparate treatment claims based on race and age discrimination.

**Retaliation**

The City argues that plaintiff has failed to produce evidence showing that he suffered an adverse employment action for engaging in protected activity or that any minor harms allegedly suffered by plaintiff were motivated by a desire to retaliate against plaintiff for engaging in protected activity. Dkt. # 45, at 26. Plaintiff responds that Hunter has cancelled his projects and isolated him from coworkers in retaliation for filing grievances contesting the City's decision to award the water treatment plant superintendent position to Hutchcraft. Dkt. # 53, at 30. He also claims the City's decision to reopen the position of water treatment plant superintendent after his successful grievance was retaliatory, and he claims that the City should have awarded him the position as the only qualified candidate after the City's initial decision to award the position to Hutchcraft was set aside. Id.

Under Title VII and the ADEA, it is unlawful for an employer to take any adverse action against an employee for filing a charge or reporting acts of alleged workplace discrimination.[4] 42 U.S.C. § 2000e-3(a); Mauldin v. Driscoll, 136 F.4th 984, 995 (10th Cir. 2025). To prove a prima

---

[4]    The parties dispute whether the OADA provides a claim for retaliation. Dkt. # 45, at m25; Dkt. # 53, at 29. The Court finds that it is unnecessary to resolve this issue, because has not produced any evidence tending to show that he has a viable retaliation claim under federal or state law.

facie case of retaliation, plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) his employer took an adverse employment action against him; and (3) there is a causal connection between the opposition and the adverse action.  Stover v. Martinez, 382 F.3d 1064, 1071 (10th Cir. 2004).  The law is clear that reporting workplace discrimination to the EEOC is protected behavior, but protected opposition broadly encompasses any type of communication putting the employer on notice that the employee is challenging allegedly discriminatory behavior. Walkingstick Dixon v. Oklahoma ex rel. Regional University System of Oklahoma Board of Regents, 125 F.4th 1321, 1339 (10th Cir. 2025); Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999); McCue v. State of Kansas, Dep't of Human Resources, 165 F.3d 784, 789 (10th Cir. 1999).  An employee may establish causation by showing that the adverse employment action occurred soon after the protected activity.  Annett v. University of Kansas, 371 F.3d 1233, 1239-40 (10th Cir. 2004); Burrus v. United Tel. Co. of Kansas, Inc., 683 F.2d 339, 343 (10th Cir. 1982).  "Unless there is a very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation."  O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1252 (10th Cir. 2001).  If the plaintiff can establish a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Pinkerton v. Colorado Dep't of Transp., 563 F.3d 1052, 1064 (10th Cir. 2009).  If the employer comes forward with a legitimate, non-discriminatory reason for its actions, the burden shifts to the employee to show that employer's stated reason is pretextual.  Id.

The City challenges plaintiff's retaliation claims on the ground that he cannot establish a prima facie case of retaliation for protected activity concerning race or age discrimination, because

he did not suffer an adverse employment action in retaliation for engaging in protected activity. There is no dispute that plaintiff filed grievances challenging the City's decision to award the water plant superintendent position to Hutchcraft after both rounds of interviews, and plaintiff succeeded in overturning the first decision on the basis that the City failed to follow its own employment policies. Dkt. # 45-16. The Commission treated plaintiff's grievance as a non-selection grievance based on the misapplication of City policies, and it did not consider his complaints of racial discrimination. Dkt. # 45-15, at 2. The City's human resources department separately investigated plaintiff's allegations of racial discrimination after the completion of the second hiring process, and found no evidence that discriminatory animus had any part in the employment decision. Id. at 9. Plaintiff clearly made a complaint of racial discrimination concerning the hiring decision for the water plant superintendent position prior to filing his EEOC charge, and he submitted his grievance to the City on August 2, 2021. Dkt. # 45-14 (plaintiff's initial grievance challenging the City's decision on the grounds of City policy and racial discrimination). Plaintiff's EEOC charge does include an allegation of age discrimination and, even though plaintiff contends that he mailed the charge in November 2021, it was not received by the EEOC until August 2022. Plaintiff clearly engaged in protected opposition to allegedly discriminatory behavior, and he can satisfy the first element of a prima facie case of retaliation.

Plaintiff prepared a document outlining his allegations of retaliatory acts committed by City employees, and plaintiff contends the allegedly retaliatory acts began in 2014.[5] Dkt. # 53-12.

---

[5]    The Court notes that plaintiff never undertakes any type of analysis in his response (Dkt. # 53) as to which of the acts listed in his document could qualify as an adverse employment action. Plaintiff attempts to state as an undisputed fact that he suffered "multiple instances of retaliation . . . after his second grievance was denied," and he simply cites 32 pages of deposition testimony without making any attempt to identify any specific act or acts that

Plaintiff testified in his deposition that a former supervisor, Roy Foster, believed that plaintiff held a grudge against Foster after plaintiff failed to receive a promotion, and Foster gave plaintiff less desirable work assignments. Dkt. # 53-11, at 3-4. Plaintiff alleges that Hunter gave him poor performance reviews and shut down his projects after he filed a grievance challenging the City's decision to award the water treatment plant superintendent position to Hutchcraft. Dkt. # 53-11, at 5-10; Dkt. # 53-12, at 1. Hunter stopped having staff meetings in July and August 2021, and plaintiff believes this was an attempt to exclude him from plant management operations. Dkt. # 53-11, at 11-12. Plaintiff includes a lengthy list of Hunter's allegedly retaliatory acts, which include ignoring his concerns about plant operations, giving him tasks outside of his job duties, setting unreasonable deadlines for assignments, and acting in an aggressive manner towards plaintiff. Dkt. # 53-12, at 2-3. Plaintiff alleges that Cathey Gillingham, a procurement coordinator, failed to consult plaintiff before sending out a bid to vendors, and plaintiff perceived that he was excluded from the process because he had filed a grievance. Dkt. # 53-11, at 12-13. Plaintiff believes that Hutchcraft regularly excludes plaintiff from meetings or project discussions, and he claims that Hutchcraft has excluded plaintiff from social gatherings at work. Dkt. # 53-12, at 2-3. Plaintiff also argues that the City's act of changing the job description after his first successful grievance to the Commission was a retaliatory act meant to prevent him from receiving the water plant superintendent position. Dkt. # 53, at 30.

---

could qualify as an adverse employment action to support a retaliation claim. Dkt. # 53, at 25. The Court has reviewed the full summary judgment record and has considered all of the evidence, but any failure to frame the issue in a particular manner is due to plaintiff's counsel's failure to make more specific arguments on this issue.

Plaintiff's retaliation claim is not based on single substantial act that constitutes an adverse employment action but, instead, it appears that plaintiff is trying to prove retaliation in a manner similar to a hostile work environment theory. Many of the alleged acts of retaliation are more properly classified as perceived personal slights rather than discrete acts that had any concrete effect on his employment, and there is no evidence that plaintiff's job assignment, pay, schedule, or any condition of his employment has been affected. For the purpose of a retaliation claim, the aggrieved employee is not required to show that an adverse action actually affected the terms or conditions of employment, but an action will be considered "materially adverse" if it would have deterred a reasonable person from making or supporting a charge of discrimination. Culp v. Remington of Montrose Golf Club, LLC, 133 F.4th 968 (10th Cir. 2025). Plaintiff does not make any argument that the alleged acts of exclusion or aggression towards him actually deterred him from pursuing a charge of discrimination or that these acts altered the terms or conditions of his employment. Instead, he places substantial emphasis on the City's decision to change the job description to expand the potential pool of applicants. Changing the job description for the plant superintendent position had no effect on the terms or conditions of plaintiff's employment and, in any event, the action did not deter plaintiff from making future challenges to perceived discriminatory conduct. The Court agrees with the City that plaintiff has not shown he suffered an adverse employment action that would support a retaliation claim.

The parties do not offer a separate pretext analysis in the context of plaintiff's retaliation claims but, even if the Court were to reach this issue, the Court would conclude that plaintiff could not establish that the City's stated reason for selecting another candidate for the water plant superintendent position was pretextual for engaging in retaliatory conduct. The Court has separately

considered whether this action tended to support plaintiff's claim that the City's explanation selecting another candidate for the water plant superintendent position was pretextual.  See supra at 13-17.  For the same reasons, the Court would also find reopening the position of water treatment plant superintendent after plaintiff's first successful grievance was not pretextual, and the City has established that it had a legitimate, non-discriminatory reason for reopening the position.  Plaintiff's retaliation claims would fail at the pretext stage even if he could establish a prima facie case of retaliation.

**IT IS THEREFORE ORDERED** that Defendant City of Tulsa's Motion for Summary Judgment and Brief in Support (Dkt. # 45) is **granted**.  A separate judgment is entered herewith.

**DATED** this 2nd day of June, 2025.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE